UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CARCO GROUP, INC., and PONJEB V, L.L.C.,

                                  Plaintiffs,         Index No. 05 CV 6038 (LDW)(ARL)

     -against-

DREW MACONACHY,

                                  Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRETRIAL MEMORANDUM OF PLAINTIFFS
## CARCO GROUP, INC. AND PONJEB V, L.L.C.

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES .................................................................................................... ii

SUMMARY OF THE CASE.................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

   I.    PLAINTIFFS' CLAIMS ..................................................................................... 3

      A.  Maconachy Breached His Fiduciary Duties of Good Faith and Loyalty. ....................... 3

      B.  Maconachy Breached the Employment Agreement and Asset Purchase Agreement ...... 7

      C.  Plaintiffs Are Entitled to Indemnification, including Attorney's
         Fees and Prejudgment Interest ........................................................................... 9

      D.  Plaintiffs are Entitled to a Declaratory Judgment that Maconachy is
         Entitled to No Further Quarterly Payments ...................................................... 11

   II.    DEFENDANT'S COUNTERCLAIMS ........................................................... 12

      A.  Plaintiffs Did Not Breach the Asset Purchase Agreement ............................... 12

      B.  Plaintiffs Did Not Breach the Employment Agreement ................................... 12

      C.  Maconachy is Not Entitled to An Accounting. ................................................ 13

      D.  Plaintiffs Did Not Retaliate Against Maconachy. ............................................ 14

      E.  Plaintiffs Did Not Fraudulently Induce Maconachy to Enter into the Employment
         Agreement. ........................................................................................................ 16

      F.  Maconachy's Sixth Counterclaim is Duplicative of His Second and Fourth
         Counterclaims. .................................................................................................. 18

      G.  Maconachy's Claim for Breach the Covenant of Good Faith and Fair Dealing is
         Duplicative of His Beach of Contract Counterclaims. ..................................... 19

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,*
    361 F.Supp.2d 283 (S.D.N.Y. 2005)..............................................................11

*Bessemer Trust Co., N.A. v. Branin,*
    544 F.Supp.2d 385 (S.D.N.Y. 2008)............................................................10

*Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.,*
    98 F.3d 13 (2d Cir. 1996) ............................................................................18

*Commander Oil Corp. v. Advance Food Svc. Equip.,*
    991 F.2d 49 (2d Cir. 1993)........................................................................6, 11

*Crigger v. Fahnestock & Co.,*
    443 F.3d 230 (2d Cir. 1993)........................................................................17

*Harris v. Provident Life and Acc. Insurance Co.,*
    310 F.3d 73 (2d Cir. 2002)..........................................................................19

*Higueros v. New York State Catholic Health Plan, Inc.,*
    526 F.Supp.2d 342 (2d Cir. 2002) ........................................................15, 16

*Independent Asset Mgmt LLC v. Zanger,*
    --- F.Supp.2d ---, 2008 WL 715478 (S.D.N.Y. Mar. 18, 2008).....................4

*International Cabletel Inc. v. Le Groupe Videotron Ltee,*
    978 F.Supp. 483 (S.D.N.Y. 1997) ...............................................................18

*Lazard Freres & Co. v. Protective Life Ins. Co.,*
    108 F.3d 1531 (2d Cir. 1997)......................................................................17

*In re Malinowski,*
    156 F.3d 131 (2d Cir. 1998).........................................................................11

*Maryland Casualty Co. v. Continental Casualty Co.,*
    332 F.3d 145 (2d Cir. 2003)...........................................................................4

*McGuire v. Russell Miller, Inc.,*
    1 F.3d 1306 (2d Cir. 1993)..........................................................................10

*Phansalkar v. Anderson Weinroth & Co.,*
    344 F.3d 184 (2d Cir. 2003)........................................................................4, 6

*Radioactive, J.V. v. Mason*,
   153 F.Supp.2d 462 (S.D.N.Y. 2001)...............................................................................4

*Rodgers v. Roulette Records, Inc.*,
   677 F.Supp. 731 (S.D.N.Y.1988) ..................................................................................13

*Seever v. Carrols Corp.*,
   528 F.Supp.2d 159 (W.D.N.Y. 2007)...........................................................................16

## STATE CASES

*Auerbach v. Amir*,
   2008 WL 479361 (E.D.N.Y. Feb. 19, 2008)..................................................................16

*Barouh Eaton Allen Corp. v. Cillco, Inc.*,
   2008 WL 465493 (E.D.N.Y. Feb. 15, 2008)....................................................................7

*Feiger v. Iral Jewelry, Ltd.*,
   41 N.Y.2d 928 (1977) .....................................................................................................6

*Intelsat, Ltd. v. International Telecom. Satellite Org.*,
   2007 WL 831809 (S.D.N.Y. Mar. 15, 2007)..................................................................11

*LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortgage Lending, Inc.*,
   2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007)..................................................................9

*Langenberg v. Sofair*,
   2006 WL 3518197 (S.D.N.Y. Dec.7, 2006) ..................................................................16

*Mack v. Transport Workers Union of Amer.*,
   2002 WL 500377 (S.D.N.Y. Mar. 29, 2002) .................................................................16

*Murray v. Beard*
   102 N.Y. 505 (1886) ........................................................................................................6

*Nicholls v. Brookdale Univ. Hosp. Med. Center*,
   2004 WL 1533831 (E.D.N.Y. July 9, 2004)..................................................................16

*Rudman v. Cowles Committee, Inc.*,
   30 N.Y.2d 1 (1972) ........................................................................................................11

*Sanders v. Madison Square Garden, L.P.*,
   2007 WL 1933933 (S.D.N.Y. July 2, 2007) ...................................................................6

*Schenk v. Red Sage, Inc.*,
   1994 WL 186301 (S.D.N.Y. Jan. 21, 1994) ..................................................................13

*Stillman v. Inservice Am., Inc.*,
    2008 WL 2156724 (S.D.N.Y. May 20, 2008) ...............................................................17, 18

*Tameny v. Atlantic Richfield Co.*,
    610 P.2d 1330 (Cal. 1980) ..........................................................................................15

*Turner v. Kondwenhoven*
    100 N.Y. 115 (1885) ....................................................................................................6

*The Youngbloods v. BMG Music, Inc.*,
    2008 WL 919617 (S.D.N.Y. Mar. 28, 2008) ...............................................................19

*Western Electric Co. v. Brenner*,
    41 N.Y.2d 291 (1977) ....................................................................................................4

## STATUTES

28 U.S.C. § 2201 .................................................................................................................10

West's Ann. Cal. Labor Code § 98.6 ..................................................................................14

*Restatement 2d Agency § 469* ..............................................................................................6

Plaintiffs CARCO Group, Inc. ("CARCO") and PONJEB V, L.L.C. ("PONJEB",

together with CARCO, "Plaintiffs") respectfully submit this Pre-Trial Memorandum of Law in

anticipation of trial, set to commence on July 18, 2008.

## SUMMARY OF THE CASE

CARCO is a Long Island-based security and investigations company founded in 1977 by

Peter O'Neill ("O'Neill"), a former FBI agent, and James E. Beasley ("Beasley"). In January

2000, CARCO and PONJEB, an affiliated entity (whose members were O'Neill and Beasley),

acquired a California-based private investigations firm then known as Murphy & Maconachy,

Inc. ("MMI"). Plaintiffs' acquisition of MMI was supposed to take advantage of the companies'

"synergies," but instead became a nightmare for the Plaintiffs.

Defendant Drew Maconachy ("Maconachy" or "Defendant") was a principal of MMI and

one of its chief rainmakers and revenue generators. Prior to forming MMI, Maconachy spent

eight years as an FBI agent investigating, *inter alia*, bank frauds and embezzlement, organized

crime, public corruption and major frauds. In September 1985, he joined John Murphy

("Murphy") in one of MMI's prior incarnations, performing private investigative work for,

among others, law firms and major Hollywood television and movie studios.

Prior to the acquisition of MMI, Maconachy made glowing and unrestrained promises

about his willingness to personally devote himself to growing MMI's book of business and

revenues for CARCO. After the acquisition, however, Maconachy's assurances turned out to be

empty promises. Worse, Maconachy repeatedly and deliberately refused to perform duties that

were assigned to him, as he was obligated to do under his employment agreement. The final

straw, which ultimately led to his termination, was the discovery of his participation in altering

business records of CARCO to deliberately mislead O'Neill.

1

The closing of Plaintiffs' acquisition of the assets of MMI occurred on January 7, 2000. On that date, Maconachy and Plaintiffs entered into an Asset Purchase Agreement ("APA"), pursuant to which Maconachy and MMI's other shareholders were paid $2 million as a down payment for the $7.2 million purchase price for the assets of MMI.  MMI's shareholders also received a Nonnegotiable Promissory Note ("Note"), pursuant to which the remaining $5.2 million of the purchase price was to be paid in quarterly installments of $162,500.00 beginning on April 7, 2000 and ceasing on January 7, 2008.

The APA required Maconachy to enter into an employment agreement ("EA") with PONJEB and CARCO, with an eight-year term. *See* APA at § 5.4; EA at § 2.  Maconachy's execution of the EA and his promises of continued loyalty to Plaintiffs was a material inducement for Plaintiffs' purchase of MMI's assets – the people of MMI.

Pursuant to the EA, Maconachy became President and an employee of PONJEB as well as a Senior Vice President of CARCO, and was responsible for managing Plaintiffs' California office. EA at § 1.1.  Under the EA, Maconachy's core obligation was to "render exclusive and full-time services in such capacities and perform such duties as the Members of the Company may assign, in accordance with the standards of professionalism and competence as are customary in the industry of which the Company is a part." EA at § 1.1.  Maconachy received a base annual salary of $200,000 (an increase from his prior $165,000 salary). EA at § 3.1.

Plaintiffs will demonstrate at trial that throughout the course of his employment Maconachy breached his fundamental covenant to render services "in such capacities and perform such duties as" were assigned to him "in accordance with the standards of professionalism and competence as are customary in the industry." EA at § 1.1.  Maconachy's wrongful conduct also amounted to a breach of Maconachy's fiduciary duties as an officer and

2

employee of PONJEB and officer of CARCO, as well as the express warranties and covenants contained in the APA. As a direct result of Maconachy's failure to perform his assigned duties, Maconachy's California office incurred net losses of more than $1.949 million in the first three years following the acquisition.

Maconachy's disloyalty and refusal to fulfill his assigned duties ultimately forced Plaintiffs to terminate Maconachy for cause on or about December 28, 2005. Section 4.3 of the EA provides for termination for cause if Maconachy, among other things, "materially breache[d] material affirmative or negative covenants or agreements hereunder," including Section 1.1 of the EA. EA at § 4.3. Pursuant to Section 4.3 of the EA, Plaintiffs' termination of Maconachy for cause terminated Maconachy's right to receive any further salary, incentive compensation or other compensation or benefits. *See id.* It also terminated his right to receive any further quarterly payments under the Note. Contemporaneous with the termination of Maconachy, Plaintiffs commenced this action to recoup the enormous losses they incurred because of Maconachy's misdeeds.

Plaintiffs will show that they are entitled to prevail on each of their claims for breach of fiduciary duty/faithless servant, breach of contract, breach of warranty, permanent injunctive relief and a declaratory judgment (Counts I, III, IV, V, VI, VIII, X and XI).[1]

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS

#### A.    Maconachy Breached His Fiduciary Duties of Good Faith and Loyalty.

Plaintiffs alleged two separate but related claims against Maconachy for breach of fiduciary duty and faithless servant. *See* SAC, Counts I and III, at ¶¶ 349-360; 373-378. As a

---

[1] By letter to Defendant's counsel dated June 10, 2008, Plaintiffs withdrew their claims for fraudulent inducement of the contract, fraud and unjust enrichment/restitution, namely, Counts II, VII and IX of the Second Amended Complaint ("SAC").

threshold matter, both the EA and APA contain New York choice-of-law provisions, pursuant to which New York law applies here. *See* EA at § 10.7; APA at § 11.8; *Radioactive, J.V. v. Mason*, 153 F. Supp. 2d 462, 469-71 (S.D.N.Y. 2001) (applying New York law in employment dispute rather than California law based on contractual choice-of-law provision). In addition, New York law applies to the parties' relationship according to the applicable five factors in the "center of gravity" or "grouping of contacts" analysis. *See Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 151-52 (2d Cir. 2003). Accordingly, the parties' claims and counterclaims are governed by New York law.

Under New York law, to establish a claim for breach of fiduciary duty, a plaintiff must show "(1) that a fiduciary duty existed between plaintiff and defendant; and (2) that the defendant breached that duty." *Independent Asset Mgmt, LLC v. Zanger*, --- F. Supp. 2d ---, 2008 WL 715478, at \*4 (S.D.N.Y. Mar. 18, 2008). As the President and employee of PONJEB and a Senior Vice President of CARCO, Maconachy also owed Plaintiffs the duty to act with the "utmost good faith and loyalty" in the performance of his duties. *Phansalkar v. Anderson Weinroth & Co.*, 344 F.3d 184, 200 (2d Cir. 2003) (*quoting Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977)); EA at § 1.1.

Plaintiffs intend to prove that Maconachy breached his fiduciary duties, in addition to his duties of utmost good faith and loyalty, repeatedly and in numerous ways, including by: (i) participating in and hiding the falsification of Weekly Time Analysis reports that were regularly submitted to O'Neill with the intent of concealing from O'Neill Maconachy's employment of his brother-in-law, something he had been directed not to do; (ii) refusing to make required sales calls and market CARCO's services (including to target specific prospects) after being repeatedly assigned such duties; (iii) diverting business to CARCO's competitors, when directed

4

not to do so; (iv) using the name "Murphy & Maconachy" for his own benefit in a lawsuit

without CARCO's permission or knowledge, in violation of the APA; (v) employing his wife,

son and brother-in-law in spite of numerous CARCO directives prohibiting nepotism; (vi) failing

to obtain retainers from CARCO's clients which resulted in write-offs of significant fees; (vii)

billing CARCO for personal expenses; (viii) refusing to market CARCO's services while on

business trips after being ordered to do so; (ix) refusing to travel alone on business trips; (x)

refusing to make multiple sales calls when driving long distances from CARCO's offices; (xi)

repeatedly risking CARCO's exposure to liability under the Fair Credit Reporting Act by using

non-approved outside vendors to perform background checks; (xii) violating California law by

employing his son "off the books" and his wife for an excessive number of hours for a part-time

employee after being ordered not to do so; (xiii) failing to check state private investigator

licensing laws when performing out-of-state investigations; and (xiv) failing to obtain a

nondisclosure agreement when sharing proprietary business information with a CARCO

competitor, which may have caused the competitor to ultimately acquire CARCO's valuable

Sears vendor screening program from CARCO.[2]  The evidence will show that these breaches

occurred from third quarter 2000 until Maconachy's termination on December 28, 2005, despite

Maconachy being given repeated warnings and directives to not engage in such conduct.

---

[2] These are a number of the specific violations of Maconachy's duties and obligations that he owed to Plaintiffs that have come to light during discovery in this matter.  There may very well be additional acts of disloyalty that would have come to light but for Maconachy's disposal of his personal computer, well after the commencement of this litigation, and after he was told by his attorney to maintain all important documents.

Maconachy testified at his deposition that he used his personal computer for CARCO matters, and that post-litigation, this computer was "fried" when an associate of his attempted to remove viruses.  However, as an experienced former FBI agent and private investigator, he no doubt was aware that material on the computer may have been recoverable by a computer forensic expert.  Nevertheless, he disposed of his computer without seeking legal advice as to whether he was allowed to so so, removing any possibility of having such computer inspected during discovery.  To date, we do not know what CARCO business records were destroyed.

It is well settled that an employee who is "faithless in the performance of his services" is required to "forfeit all compensation received after his first disloyal act." *Phansalkar v. Anderson Weinroth & Co.*, 344 F.3d at 188, 200; *see also Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 929 (1977); RESTATEMENT 2d AGENCY § 469.  Disgorgement is warranted whenever an employee "substantially violates the contract of service" or "acts adversely to his employer in any part of the transaction." *Phansalkar v. Anderson Weinroth & Co.*, 344 F.3d at 201-02 (*quoting Turner v. Kondwenhoven*, 100 N.Y. 115, 120 (1885); *Murray v. Beard*, 102 N.Y. 505, 508 (1886)).  Critically, to be entitled to disgorgement, an employer is "not required to show that it 'suffered . . . provable damage as a result of the breach of fidelity by the agent.'" *Sanders v. Madison Square Garden, L.P.*, 2007 WL 1933933, at *4 (S.D.N.Y. July 2, 2007) (*quoting Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d at 929).

Plaintiffs will demonstrate at trial that they are entitled to disgorgement of all salary, incentive compensation and fringe benefits paid to Maconachy from third quarter 2000 until his termination on December 28, 2005.  These amounts total $1,059,903 in paid salary, $333,206 in paid incentive compensation and $118,260 in paid fringe benefits.

In addition, Maconachy should be required to disgorge all amounts paid to him under the APA from third quarter 2000 to the date of his termination, since the EA and APA must be construed together.  "[S]eparate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously." *See Commander Oil Corp. v. Advance Food Svc. Equip.*, 991 F.2d 49, 52-53 (2d Cir. 1993).  "Contracts should be interpreted together if the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken." *Id.* at 53 (internal quotations omitted).  Here, not only were the EA and APA executed simultaneously, they relate to the same

6

subject matter and arise from the same transaction.   Indeed, testimony at trial will demonstrate

that Maconachy's promise of faithful performance of his duties was one of the far most valuable

assets that Plaintiffs acquired under the APA.  In addition, the APA incorporates the EA in a

number of provisions.  *See, e.g.*, APA at § 5.7, §6.9 and § 9.1.  Therefore, the EA and APA were

mutually dependent documents, and Maconachy's faithlessness in the performance of his duties

entitles Plaintiffs to disgorgement of the $1,368,421 in quarterly payments for Maconachy's

share of the assets of MMI from third quarter 2000 to the date of his termination.  Plaintiffs also

seek a declaration that nothing further is owed to Maconachy under either the APA or EA.

### B.      Maconachy Breached the Employment Agreement and Asset Purchase Agreement

Plaintiffs have alleged three separate claims against Maconachy for breaches of the EA

and APA.  *See* SAC, Counts IV and V and VIII, at ¶¶ 379-385; 386-391; 406-413.  To prevail,

Plaintiffs must prove the following elements: "(1) the existence of a contract; (2) due

performance by plaintiff; (3) breach of the contract by defendant; and (4) damage as a result of

the breach."  *Barouh Eaton Allen Corp. v. Cillco, Inc.*, 2008 WL 465493, at *4 (E.D.N.Y. Feb.

15, 2008).

Plaintiffs and Maconachy entered into both the EA and APA on January 7, 2000.  There

is no dispute that these are enforceable contracts.  Plaintiffs fully performed under each of these

agreements by paying Maconachy all salary, incentive compensation and payments for

Maconachy's share of the assets of MMI to which Maconachy was entitled until he was

terminated for cause on December 28, 2005.  Maconachy's termination for cause, of course,

excused any further duty to make any remaining payments under the EA and APA.  *See* Points

I.D. and II.B., below.

7

As to the third element – the breach – the evidence will show that Maconachy breached both the EA and APA. The key provision, the essence of the acquisition, obligated Maconachy to "render exclusive and full-time services in such capacities and perform such duties as the Members of the Company may assign, in accordance with such standards of professionalism and competence as are customary in the industry of which the Company is a part." EA at § 1.1. Maconachy breached this contractual commitment by willfully and repeatedly refusing to perform duties assigned to him and by routinely deviating from customary standards in the investigative industry, as further set forth in Point I.A., above.

This obligation in the EA was expressly incorporated into the APA pursuant to Section 5.7 of the APA. Further, as explained above in Point I.A., the EA and APA were mutually dependent and must be treated as one. Therefore, Maconachy's breaches of the EA were likewise breaches of the APA.

As a direct result of these breaches, the California office of the MMI division of CARCO alone incurred net losses of $1,949,053 in the first three years after the acquisition. In addition, Plaintiffs were damaged by their payment of Maconachy's salary, incentive compensation, fringe benefits and the purchase price for Maconachy's share of MMI.

Maconachy breached the APA in additional ways that entitle Plaintiffs to injunctive relief. For example, once Plaintiffs acquired MMI, they bought the sole and exclusive right to use the name "Murphy & Maconachy, Inc." *See* APA at § 1. Yet, in or around 2005, Maconachy commenced a lawsuit against a CARCO client, well-known Los Angeles-lawyer Thomas V. Girardi and his law firm in the name of "Murphy & Maconachy, Inc." without CARCO's consent or knowledge – even though the entity known as "Murphy & Maconachy, Inc." was formally dissolved in 2001. Accordingly, at the close of trial, Plaintiffs will ask this

Court to award a permanent injunction barring Maconachy from misappropriating the name "Murphy & Maconachy." *See* SAC, Count VII, at ¶ 412.

The above breaches also give rise to a claim of breach of express warranty. *See* SAC, Count VI, at ¶¶ 393-398. To prove a claim for breach of an express warranty, plaintiffs must show that "(1) plaintiff[s] and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." *LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortgage Lending, Inc.*, 2007 WL 2324052, at *8 (S.D.N.Y. Aug. 13, 2007) (internal quotations omitted).

Maconachy expressly warranted in the EA that he would "render exclusive and full-time services in such capacities and perform such duties as the Members of the Company may assign, in accordance with such standards of professionalism and competence as are customary in the industry of which the Company is a part." EA at § 1.1. This warranty was material to Plaintiffs' decision to enter into the EA and APA, and was incorporated into the APA pursuant to Section 5.7 of the APA.

Finally, regardless of whether these above breaches are deemed breaches of material covenants or of warranty, Plaintiffs' remedy is the same: they are entitled to indemnification for all of their losses.

## C.      Plaintiffs Are Entitled to Indemnification, including Attorney's Fees and Prejudgment Interest.

As shown above, and as will be demonstrated at trial, Maconachy breached the EA and the APA. As such, he is obligated to indemnify Plaintiffs for their losses arising out of those breaches, including but not limited to interest, penalties, and reasonable attorney's fees and disbursements. *See* SAC, Counts VI and XI, at ¶¶ 392-398; 426-430.

9

Section 9.1 of the APA provides that Maconachy shall "indemnify, defend, and hold [Plaintiffs] harmless" against "any and all losses, liabilities, damages, deficiencies, costs, or expenses (including interest, penalties, and reasonable attorney's fees and disbursements) . . . based on, arising out of, or otherwise due to any inaccuracy in or breach of any representation, warranty, covenant or agreement . . . contained in this Agreement or in any document or other writing delivered pursuant hereto . . ." APA at § 9.1; *see* SAC, Count XI, at ¶¶ 426-430. Plaintiffs will demonstrate at trial that, among other breaches, Maconachy breached the most fundamental covenant of the transaction, contained in Section 1.1 of the EA. *See* Point I.B., above. Therefore, Section 9.1 of the APA requires Maconachy to reimburse Plaintiffs for all of its losses.

In addition, Plaintiffs are entitled to recover attorney's fees and prejudgment interest under Section 9.1 of the APA and New York law. *See* APA at § 9.1 (providing that Plaintiffs are entitled to recover "interest, penalties, and reasonable attorney's fees and disbursements"); *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) ("parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law"); *Bessemer Trust Co., N.A. v. Branin*, 544 F. Supp. 2d 385, 392 (S.D.N.Y. 2008) ("New York state law requires that 'interest shall be recovered upon a sum awarded because of a breach of performance on a contract.'") (*quoting* N.Y. Civ. Prac. L. & R. 5001(a)).

Based on the foregoing, the Court should grant Plaintiffs a declaratory judgment, pursuant to 28 U.S.C. § 2201, that they are entitled to indemnification, including attorney's fees and prejudgment interest, in accordance with Section 9.1 of the APA.

**D.    Plaintiffs are Entitled to a Declaratory Judgment
       that Maconachy is Entitled to No Further Quarterly Payments.**

Plaintiffs have alleged a final claim against Maconachy for a declaratory judgment,

pursuant to 28 U.S.C. § 2201, that Maconachy is not entitled to receive any further quarterly

payments allegedly owed to him as of the date of his termination under the APA. *See* SAC,

Count X, at ¶¶ 421-425. Plaintiffs intend to prove that Maconachy's breaches excused

performance of Plaintiffs, allowing them to suspend their performance under the APA and retain

the remaining quarterly payments that would have been otherwise due to Maconachy.

A "party's obligation to perform under a contract is . . . excused where the other party's

breach of the contract is so substantial that it defeats the object of the parties in making the

contract." *See, e.g., Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp.

2d 283, 295 (S.D.N.Y. 2005). Further, where two contracts are mutually dependant, "breach of

one undo[es] the obligations under the other." *Rudman v. Cowles Comm., Inc.*, 30 N.Y.2d 1, 13

(1972). As explained in Point I.A., above, Maconachy's breaches of the EA were so material

and pervasive that they defeated the essence of the contract:  Plaintiffs' purchase of the services

of Maconachy. Further, as explained in Point I.A., above, the EA and APA are mutually

dependant. *See Commander Oil Corp. v. Advance Food Svc. Equip.*, 991 F.2d at 52-53.

Therefore, Maconachy's material breach of and failure to perform under the EA was a

breach of the APA, entitling Plaintiffs to suspend their performance under the APA and cease

payment of all future quarterly payments owed to Maconachy. *See, e.g., Intelsat, Ltd. v.

International Telecom. Satellite Org.*, 2007 WL 831809, at *1 (S.D.N.Y. Mar. 15, 2007).[3]

---

[3] In any event, Plaintiffs are entitled to retain the quarterly payments owed to Maconachy as a setoff for all losses for
which Maconachy is contractually required to indemnify Plaintiffs. "The right of setoff . . . allows entities that owe
each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B
when B owes A." *In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998) (internal quotations omitted). Here, Section
9.1 of the APA provides that Maconachy shall indemnify Plaintiffs for his "inaccuracy in or breach of any

11

## II.   DEFENDANT'S COUNTERCLAIMS

### A.   Plaintiffs Did Not Breach the Asset Purchase Agreement.

Maconachy will claim at trial that Plaintiffs allegedly breached the APA by failing to pay Maconachy quarterly payments that would have been owed to him under the Note had he not been terminated. *See* Answer to Amended Complaint[4] ("AAC"), First Counterclaim, at ¶¶ 127-130. However, as explained in Point I.D., above, Maconachy's breach of the EA and APA excused Plaintiffs' duty to perform under the APA. *See* Point I.D. Therefore, Plaintiffs were entitled to cease making quarterly payments to Maconachy after his termination.

### B.   Plaintiffs Did Not Breach the Employment Agreement.

Maconachy will claim at trial that CARCO breached the EA by terminating him prior to the expiration of the term of his employment without good cause and by ceasing to pay him salary, benefits or incentive compensation following his termination. *See* AAC, Second Counterclaim, at ¶¶ 131-133. However, the EA expressly provides for termination for cause if Maconachy, among other things, "materially breaches material affirmative or negative covenants or agreements hereunder." EA at § 4.3. The EA also provides that Maconachy "shall have no right to receive any Annual Salary, Incentive Compensation, or other compensation or benefits under this EA on or after the effective date" of a for-cause termination. *Id*.

Maconachy materially breached the covenant that he would "render exclusive and full-time services in such capacities and perform such duties as the Members of the Company may assign, in accordance with such standards of professionalism and competence as are customary

---

representation, warranty, covenant or agreement" in the parties' agreements. Accordingly, Plaintiffs were entitled to retain all future quarterly payments owed to Maconachy as a setoff for all amounts for which Maconachy will have to indemnify Plaintiffs pursuant to Section 9.1 of the APA.

[4] Maconachy's Answer to the Second Amended Complaint incorporates by reference the counterclaims alleged in the Answer to Amended Complaint. *See* Answer to Second Amend. Complaint at 15. Therefore, all references herein to Maconachy's counterclaims refer to the counterclaims in the Answer to Amended Complaint.

in the industry of which the Company is a part." EA at § 1.1.  This breach entitled Plaintiffs to terminate Maconachy's employment and cease all payments that would have been owed to him under the EA.

Even aside from the above contractual language, it is well-settled "insubordination may constitute good cause for discharge even where the contract does not enumerate any grounds for termination." *Schenk v. Red Sage, Inc.*, 1994 WL 18630, at *13 (S.D.N.Y. Jan. 21, 1994). Maconachy's persistent refusal to follow lawful directives and assignments, and participation in a scheme to falsify corporate records to hide critical information from O'Neill, the owner, entitled Plaintiffs to terminate the EA and cease payments to Maconachy of any salary, benefits or incentive compensation.

### C.     Maconachy is Not Entitled to An Accounting.

Maconachy's Third Counterclaim alleges that Maconachy is entitled to an accounting to "obtain and inspect all information and records necessary to ascertain and confirm the amounts owed to him as the Incentive Compensation." AAC, Third Counterclaim, at ¶¶ 134-140. "In order to establish a right to an accounting, which is an action in equity, plaintiff must demonstrate the existence of a fiduciary relationship between himself and defendant, or the existence of a joint venture or other special circumstances warranting equitable relief." *Rodgers v. Roulette Records, Inc.,* 677 F. Supp. 731, 738 (S.D.N.Y.1988).  No grounds exist here for an accounting.

As Maconachy correctly acknowledges, Maconachy's incentive compensation formula is based on MMI's gross annual profits.  AAC, Third Counterclaim, at ¶ 135; *see also* EA at § 3.2. During discovery, Plaintiffs produced Plaintiffs' audited financial statements for years 2000 through 2005.  These documents are included as exhibits in the parties' Joint Pretrial Order. *See*

13

JPTO, Plaintiffs' Exhs. 338-342. These financial statements provide Maconachy with all the information necessary to calculate his right to incentive compensation. Therefore, there are no circumstances warranting equitable relief and the Court should dismiss Maconachy's claim for an accounting. In any event, since Maconachy is now in possession of the audited financial statements for the years in question, this counterclaim has become moot.

### D.      Plaintiffs Did Not Retaliate Against Maconachy.

In Maconachy's Fourth Counterclaim, Maconachy alleges that O'Neill and CARCO "unlawfully retaliated against Maconachy" because of "disputes over his wages and compensation" and Maconachy's "refusals" to take a pay cut, renegotiate the purchase price for the assets of MMI and modify the incentive compensation formula. AAC, Fourth Counterclaim, at ¶¶ 141-157. Maconachy claims that this alleged retaliation over wage disputes is "in violation of New York Labor and California Labor laws." *Id*. at ¶ 156.

First, Maconachy's opaque reference to California law is immaterial, because the EA expressly provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York." EA at § 10.7. The EA also provides that the EA "contains the entire agreement between the parties with respect to the subject matter hereof and the transactions related thereto." EA at § 10.6. Finally, even absent a contractual choice-of-law provision, New York law applies to the parties' relationship under New York's "grouping of contacts" or "center of gravity" approach to conflict of laws. *See* Point I.A., above. Therefore, any dispute concerning Maconachy's right to compensation is governed by New York law.

Even assuming, *arguendo*, that California law did apply, the California Labor Code's retaliation provision is simply inapplicable to Maconachy's so-called "wage disputes." The California Labor Code provides a cause of action for retaliation for the employee's engaging in

14

conduct specifically protected by the Labor Code. *See* West's Ann. Cal. Labor Code § 98.6.

Here, Maconachy has failed to identify any conduct that was specifically protected by the Labor

Code. Further, while a cause of action may exist for wrongful termination if the employee's

discharge violates a "firmly established principle of public policy," *Tameny v. Atlantic Richfield*

*Co.*, 610 P.2d 1330, 1332 (Cal. 1980), here, Maconachy has failed to identify any firmly

established principle of public policy, much less a violation of such a policy. Therefore, the

Court should dismiss Maconachy's retaliation claim under the California Labor Code.

With respect to New York law, Section 215 of the New York Labor Law provides that it

is unlawful for an employer to "discharge, penalize or in any other manner discriminate against

any employee because such an employee has made a complaint to his employer . . . that the

employer has violated any provision of this chapter." Labor Law § 215(1). However, "[i]n order

to state a claim under New York Labor Law Section 215, a plaintiff must adequately plead that

while employed by the defendant, he or she made a complaint about the employer's violation of

some provision of the New York Labor Law [other than Section 215], and was terminated or

otherwise penalized, discriminated against, or subjected to an adverse employment action as a

result." *See Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347

(E.D.N.Y. 2007).

Maconachy's Labor Law claim fails for two reasons. First, an employee must both

identify which provisions of the Labor Law the employer has allegedly violated, and

"specifically inform" the employer about its violation of the "particular provisions" at issue. *See*

*Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d at 347-48; *Seever v.*

*Carrols Corp.*, 528 F.Supp.2d 159, 166 (W.D.N.Y. 2007).

15

It is well-settled that where, as here, an employee has not identified even a single provision of the Labor Law, other than Section 215, that the employer purportedly violated, and has not notified the employer about its violation of the particular provision at issue, the employee's claim of retaliation under Section 215 of the Labor Law must be dismissed. *See Nicholls v. Brookdale Univ. Hosp. Med. Center*, 2004 WL 1533831, at *5 (E.D.N.Y. July 9, 2004); *Mack v. Transport Workers Union of Amer.*, 2002 WL 500377, at *5 (S.D.N.Y. Mar. 29, 2002); *Seever v. Carrols Corp.*, 528 F.Supp.2d at 166.

Second, "New York's anti-retaliation provision requires a nexus between the employee's complaint and the employer's retaliatory action." *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d at 347. Here, Plaintiffs will show at trial that there simply is no evidence to suggest that Maconachy was terminated for any reason but his misconduct, insubordination, disloyalty and breaches of the EA and APA. Therefore, the Court should find that there was no causal nexus between Maconachy's purported complaints and his termination, and accordingly, dismiss Maconachy's retaliation claim.

## E.     Plaintiffs Did Not Fraudulently Induce Maconachy to Enter into the Employment Agreement.

Maconachy's Fifth Counterclaim alleges that Plaintiffs fraudulently induced Maconachy to enter into the EA. AAC, Fifth Counterclaim, at ¶¶ 158-164. Specifically, Maconachy claims that Plaintiffs "deliberately concealed and/or materially omitted" their "intent to include virtually all costs of operations relating to MMI as direct expenses in calculating gross profits" knowing that such concealment would "artificially deflat[e] the gross profits of MMI." *Id.* at ¶ 162.

Under New York law, the elements of a fraudulent inducement claim are: "'(i) a representation of material fact; (ii) which was untrue; (iii) which was known to be untrue or made with reckless disregard for the truth; (iv) which was offered to deceive another or induce

16

him to act; and (v) which that other party relied on to its injury.'" *Auerbach v. Amir*, 2008 WL 479361, at *6 (E.D.N.Y. Feb. 19, 2008) (*quoting Langenberg v. Sofair*, 2006 WL 3518197, at *4 n. 3 (S.D.N.Y. Dec.7, 2006).  Maconachy's fraudulent inducement claim fails for two reasons.

First, where an alleged misrepresentation or omission "relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances . . . would be unjustifiable." *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1543 (2d Cir. 1997).  In particular, "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006).

Here, Maconachy was a sophisticated businessman represented by counsel and an accountant throughout the negotiations and acquisition of the assets of MMI.  During due diligence, Plaintiffs provided Maconachy (and his lawyer and accountant) with access to information concerning how acquisition costs had been similarly treated on the books of companies that CARCO had acquired in past transactions.  Maconachy's failure to avail himself of this information simply cannot give rise to a claim of fraud where Plaintiffs did not commit any material omissions or misstatements.  At best, Maconachy's claim is nothing more than a case of "seller's remorse," raised for the first time in a counterclaim after he was sued.

Second, where, as here, a plaintiff seeks to prove a fraud claim "co-existent with an alleged breach of contract," the plaintiff must either (1) "demonstrate a legal duty separate from the duty to perform under the contract;" (2) "demonstrate a fraudulent misrepresentation

17

collateral or extraneous to the contract;" or (3) "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Stillman v. Inservice Am., Inc.*, 2008 WL 2156724, at \*3 (S.D.N.Y. May 20, 2008); *Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.*, 98 F.3d at 20.

Here, Plaintiffs did not owe Maconachy a legal duty separate from the duty to perform under the contract. Further, Maconachy does not allege any fraudulent misrepresentation collateral and extraneous to the contract – indeed, Maconachy alleges an omission rather than a false representation, which, by its very nature, may not be a promise "collateral and extraneous" to the contract. Finally, Maconachy does not seek special damages that are unrecoverable as contract damages. Therefore, Maconachy's fraud claim is nothing more than a rehash of his breach of contract claim in the form of an allegation that Plaintiffs "did not intend to meet [their] contractual obligations," which cannot give rise to a fraudulent inducement claim. *International Cabletel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 486 (S.D.N.Y. 1997) (internal quotations omitted). Accordingly, Plaintiffs' alleged failure to disclose anticipated future treatment of MMI's operating costs cannot give rise to a claim for fraudulent inducement.

### F.    Maconachy's Sixth Counterclaim is Duplicative of His Second and Fourth Counterclaims.

Maconachy alleges in his Sixth Counterclaim that Plaintiffs "willfully, wrongfully and unlawfully refused and/or failed to pay Maconachy some or all of the incentive compensation to which he is entitled and which he previously earned." AAC, Sixth Counterclaim, at ¶¶ 165-173. Maconachy then recites the bland allegation that he is entitled to "payment of all wages previously earned, liquidated damages, interest, attorneys' fees and other statutory remedies and relief available under both New York and California Labor laws." AAC, Sixth Counterclaim, at ¶ 172.

As an initial matter, this Counterclaim is duplicative of Maconachy's Second and Fourth Counterclaims, which allege that Maconachy breached the EA by failing to pay him, *inter alia*, incentive compensation, and retaliated against him in violation of New York and California labor laws. AAC, Second Counterclaim, at ¶¶ 131-133; Fourth Counterclaim, at ¶¶ 141-157. However, as explained in Points II.B., and II.D., above, neither Counterclaim has merit. Accordingly, this claim should be dismissed.

In addition, the EA simply does not provide for "liquidated damages" nor does Maconachy set forth which additional "statutory remedies" he purports to be entitled to receive. Accordingly, Maconachy's Sixth Counterclaim should be dismissed in its entirety.

## G.    Maconachy's Claim for Breach the Covenant of Good Faith and Fair Dealing is Duplicative of His Beach of Contract Counterclaims.

Finally, Maconachy's Seventh Counterclaim alleges that Plaintiffs "breached their respective covenants of good faith and fair dealing with regard to Maconachy." AAC, Seventh Counterclaim, at ¶¶ 174-75. However, it is well-settled that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Here, Maconachy's breach of covenant of good faith and fair dealing claim is duplicative of his First and Second Counterclaims for breach of the APA and EA and must, therefore, be dismissed. *See, e.g., The Youngbloods v. BMG Music, Inc.*, 2008 WL 919617, at *1 (S.D.N.Y. Mar. 28, 2008).

## CONCLUSION

Accordingly, at the close of trial, Plaintiffs will ask for the following judgment:

(1) **Damages:** for Maconachy's faithlessness, breaches of fiduciary duty, contract and warranty, in the amount of $1,949,053.00; plus disgorgement of all paid salary, incentive compensation, fringe benefits and quarterly payments under the APA from third quarter 2000 through 2005 in the amount of $2,879,790.00, for a total of $4,828,843.00, plus prejudgment interest;

(2) **Declaratory Judgment:** (i) that no further payments are owed to Maconachy under the APA or EA; (ii) that Maconachy is required to indemnify Plaintiffs for all of their losses, including attorneys' fees, caused by Maconachy's breaches of the APA and EA;

(3) **Injunctive Relief:** permanently enjoining Maconachy from using the name "Murphy & Maconachy, Inc." in any manner;

(4) **Other Relief:** including attorney's fees, prejudgment interest, costs and disbursements, in an amount to be determined after trial; and,

(5) **Dismissal of Counterclaims:** alleged by Maconachy in his Answer to the Second Amended Complaint.

Dated: June 17, 2008

Respectfully submitted,

By: _____/s/_____
  James M. Wicks
Franklin C. McRoberts
FARRELL FRITZ, P.C.
1320 RexCorp Plaza
Uniondale, New York 11556-1320
(516) 227-0700

Edward F. Cunningham
62 Cambridge Avenue
Garden City, NY 11530
(516) 328-3705
*Co-counsel for Plaintiffs*

20